478 P.2d 117

**Huebert GIPSON, Appellant,**

v.

**E. D. BABBITT MOTOR COMPANY, Allstate Insurance Company, an Illinois corporation; and Ed Gross, Appellees.**

**No. 1 CA–CIV 975.**

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 23, 1970.
Review Denied March 30, 1971.

Charles M. Brewer and Herbert Mallamo, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Ralph E. Hunsaker, Phoenix, for Allstate and Gross.

Mangum, Wall & Stoops by Daniel J. Stoops, Flagstaff, for E. D. Babbitt Motor Co.

JACOBSON, Judge.

Whether plaintiff proved the causal connection between his automobile accident and any alleged negligence on the part of defendants is called into question on this appeal from the trial court's granting of defendants' motions for directed verdict at the close of plaintiff's case.

Plaintiff-appellant, HUEBERT GIPSON, brought an action against defendant-appellees, E. D. BABBITT MOTOR COMPANY, ALLSTATE INSURANCE COMPANY and ALLSTATE'S adjuster, ED GROSS, contending that Babbitt Motors improperly did repairs to his vehicle under the direction of Allstate and its adjuster which resulted in the mechanical failure of the vehicle causing an accident and inflicting injuries.

At the close of plaintiff's case, the trial court granted all defendants' motions for directed verdicts on the ground "that as a matter of law the evidence is not sufficient for consideration by a jury on the theories of liability presented."

Plaintiff appealed from the verdicts so directed and raised several questions on appeal all of which may be summarized as whether or not the plaintiff presented evidence of negligent acts and admissions on the part of the defendants sufficient to go to the jury on the question of liability.

Viewing the evidence in a light most favorable to the plaintiff, as we are required to do on a directed verdict for the defendants, Vreeland v. State Board of Regents, 9 Ariz.App. 61, 449 P.2d 78 (1969), the following appears.

On August 2, 1964, the plaintiff was proceeding from Phoenix, Arizona, to Kia-

bito, Arizona, on the Navajo reservation where he was employed as an ironworker. Approximately 25 miles north of Flagstaff, Arizona, during a heavy rainstorm, his 1958 Ford pickup slid off the road and into a barrow pit. Because of wet weather and having run over a culvert after leaving the road which caused damage to his pickup, plaintiff was unable to move the vehicle. After spending the night in his pickup, plaintiff caught a ride back into Flagstaff and there contacted Tyrrell Chevrolet Company concerning the damaged pickup being hauled back to Flagstaff for repairs. Tyrrell Chevrolet sent its employee, Mr. Kypher with a wrecker to haul the pickup back to Flagstaff.

Mr. Kypher testified that when he arrived at the scene where the pickup was left, it appeared there was damage to the front end and that the rear wheels of the pickup were buried up to the axle. With the assistance of the Highway Patrol, he winched the pickup onto the highway, preparatory to towing it to Flagstaff. Upon examination he found he could not haul the pickup with the front wheels on the ground as the tie rods connecting these wheels were damaged. He also testified that the left rear tire appeared to have been spun in the dirt and the rubber was "burned off." This tire was flat. Kypher testified that he changed this tire with a spare that was found in the back of the pickup. The pickup was then hauled to Flagstaff, and subsequently placed in defendant Babbitt Motors Garage for repairs.

At the time of this initial accident plaintiff carried a policy of collision insurance issued by defendant Allstate. Defendant Gross, after being advised by the Phoenix office of Allstate of the accident and coverage, inspected the damaged pickup at Babbitt's yard. There is some conflict in the testimony as to whether Allstate or the plaintiff requested that the vehicle be removed from Tyrrell Chevrolet to Babbitt's for repair. However in view of our determination as to liability in this case, such a conflict becomes immaterial.

After inspecting the vehicle at Babbitt's garage and in consultation with the foreman of the Babbitt body shop, Gross prepared an estimate of repairs to the pickup truck. This estimate, which was introduced into evidence at the time of trial, dealt with repairing the front of the vehicle, straightening the two front wheels and some body work on the front fender of the vehicle. The estimate prepared by Gross did not include any work to be done by Babbitt's to the rear wheels of the vehicle. Babbitt's shop foreman and the employee who actually did the work on the vehicle both testified that they did no repairs on the rear wheels of the pickup and in particular the left rear wheel was untouched by them. It was further their testimony that in August, 1964, they had no equipment for straightening wheels and that this work was subcontracted by them to other body shops in Flagstaff.

On August 14, 1964, the plaintiff obtained possession of the pickup from Babbitt's and was told all the repairs had been completed and the vehicle had been road tested. Plaintiff, on that date, then proceeded from Flagstaff toward his home in Phoenix, Arizona. He testified that after leaving Flagstaff he experienced steering difficulties with the vehicle. At a point south of Cordes Junction on the Black Canyon Highway, plaintiff attempted to pass another vehicle, when he lost control of the pickup, skidded on the highway, vaulted a guard rail and plunged down an embankment. He was severely injured as a result of this second accident.

A subsequent investigation disclosed that the hub of the left rear wheel had collapsed under the strain of driving and that this collapse was the precipitating cause of the accident. Plaintiff's experts testified that the cause of the collapse was the result of heat having been applied to the wheel causing a weakening of the metal.

Plaintiff testified he had never had any work done on the wheels of the vehicle after he acquired the pickup in 1961 at which time the speedometer read approximately 40,000 miles. At the time of the

accident the speedometer read approximately 82,000 miles. Plaintiff's predecessor in interest in the vehicle also testified that he had not had any work done on the wheels of the pickup and that he had acquired the 1958 pickup in 1960 as a used vehicle. No evidence was presented as to the history of the pickup between the time of its original purchase and its acquisition by plaintiff's predecessor in title in 1960.

Plaintiff's expert, in answer to a hypothetical question, was of the opinion that the wheel which he observed and tested could not have been driven for 40,000 miles without collapsing.

The method of rotating tires followed by the plaintiff seems to have been that when a tire went flat, the spare was used in its place and the previously flat tire was then used as a new spare.

Further evidence disclosed that the left rear wheel involved in the second accident had a different appearance than the other wheels on the vehicle, it appearing "shiny" as if it had been recently painted. Plaintiff testified that prior to the accident of August 2, 1964, all the wheels appeared to have been the same color.

A wrecker driver who was called in connection with the second accident testified he observed a flat tire mounted on a wheel lying in the back of the pickup which appeared to have had the rubber "burned off."

The evidence was in this state when the plaintiff rested and the trial court directed a verdict based on the lack of a connection between the defendant Babbitt's and the left rear wheel of the vehicle which caused the accident.

Turning first to the position of Allstate and its adjuster in this case, plaintiff's theory of liability against these defendants is predicated upon the fact that Allstate under its policy, reserved to itself an option to make repairs. This theory continues to the effect that if Allstate elects to make repairs it assumes the duty of exercising due care in inspecting the vehicle for damage and for repairs of that damage. In this regard plaintiff relies upon Buerkle v. Superior Court of Los Angeles County, 59 Cal.2d 370, 29 Cal. Rptr. 509, 379 P.2d 941 (1963). In the case before us, we need not determine whether Arizona would impose the duty upon an insurance carrier to inspect for repairs as has been done in California, for in this case there is no evidence that Allstate and its adjuster in fact owed a duty of inspection and repair to the portion of the vehicle causing the second accident or that if such a duty was present that they failed to exercise due care in its performance. Here there is no evidence to show that the wheel which collapsed on August 14 was involved in the accident of August 2, giving rise to Allstate's obligation under its policy to repair that wheel.

The policy provisions involved provided that Allstate's obligation was:

"To pay for direct and accidental loss of or damage to the automobile * * * caused by collision of the automobile with another object or by upset of the automobile * * *."

The evidence was clear that the left rear wheel which was on the vehicle on August 2, was removed and replaced with a spare. The evidence further shows that this "burned out" left rear wheel was found mounted in the back of the pickup after the accident of August 14. Allstate, under its policy, had no obligation to repair portions of the vehicle which were not involved in the obligation-creating accident, its duty to repair being limited to restoring the vehicle to substantially the same condition as existed prior to the accident. Owens v. Pyeatt, 248 Cal.App.2d 840, 57 Cal. Rptr. 100 (1967); Gregoire v. Insurance Co. of North America, Vt., 261 A.2d 25 (1969).

Moreover, even if we assume arguendo that Babbitt's did work on the left rear wheel there is no evidence that Allstate authorized work to be done on that wheel. For liability-creating purposes as far as Allstate is concerned, Babbitt's must be considered as an agent of Allstate. Lump-

kin v. Allstate, 251 S.C. 19, 159 S.E.2d 852 (1968). Here, Allstate's direction to Babbitt's, its agent, was to perform repairs on the front of the vehicle. Under well known principles of agency, Allstate could not be made liable for acts of its agents done outside the scope of its direct authority. School Dist. No. 9 of Apache County v. First Nat'l Bank of Holbrook, 58 Ariz. 86, 118 P.2d 78 (1941).

We hold that the trial court properly directed a verdict in favor of Allstate and its adjuster Ed Gross at the close of plaintiff's case in chief.

Turning now to the liability of Babbitt's, plaintiff's argument to this court as to its liability, is the same as that made to the trial court. This argument is that (1) the culprit wheel had a different appearance after August 2, 1964, than it had before August 2, 1964, and that it could not have been driven 40,000 miles; (2) that therefore it must have been painted; (3) that since it was only in Babbitt's possession after August 2, 1964, Babbitt's must have painted it; (4) that Babbitt's must have painted it because they did work on it; (5) that the work Babbitt's performed on the wheel included the application of heat because it needed straightening; (6) that the heat Babbitt's applied to the wheel was too intense, causing the metal to weaken; and (8) that as a result of this negligent application of heat the wheel collapsed thereby causing injury to the plaintiff.

As can be readily seen, plaintiff's case as to the liability of Babbitt's, is based on an inference upon an inference. In order for plaintiff to present a prima facie case based upon such evidence, it must show that all prior inferences exclude any other reasonable theory of occurrence, rather than a mere probability of an occurrence. Buzard v. Griffin, 89 Ariz. 42, 358 P.2d 155 (1960).

"This rule is not based on an application of the exact rules of logic, but upon the pragmatic principle that a certain *quantum* of proof is arbitrarily required when the courts are asked to take away life, liberty or property." New York Life Ins. Co. v. McNeely, 52 Ariz. 181, 79 P. 2d 948 (1938).

Viewing first the inference plaintiff draws that since the wheel in question could not have been driven 40,000 miles, it must have been repaired by Babbitt's. An equally reasonable inference could be drawn that since the wheel could not have been driven 40,000 miles, it in fact had not been driven 40,000 miles, it having been a spare tire during the entire time or a substantial portion of the time of the pickup's road life.

The plaintiff's evidence as to the rotation of the tires only when a flat occurred does not contradict the latter theory for there is no evidence when in fact plaintiff even had a flat involving this particular wheel, or if he had a flat when it occurred and the length of time the wheel had been driven prior to that time.

As to the "shiny appearance of the left wheel," plaintiff would infer that Babbitt painted it because it was bent and that to straighten the wheel they applied heat to it. First there must be initial inference from the circumstantial evidence that all the wheels appeared alike prior to August 2, that in fact the wheel had been painted. From that inference must be drawn the inference that Babbitt's painted it, and from that inference must be drawn the subsequent inference that it was painted because it was bent. From these inferences must be drawn the crucial inference that heat was applied to straighten it.

The test to be applied when inferences are made on inferences is set forth in New York Life Ins. Co. v. McNeely, 52 Ariz. 181, 79 P.2d 948, *supra*:

"[T]he courts do not mean that under no circumstances may an inference be drawn from an inference, but rather that the prior inferences must be established to the exclusion of any other reasonable theory rather than merely by a probability, in order that the last inference of the *probability* of the ultimate fact may be based thereon." (emphasis in original)

Assuming that no other reasonable inference could be drawn other than that Babbitt's painted the wheel, can it be logically argued that the only reason it was painted was because it was bent. We think not. For example, it could have been repainted because while in Babbitt's paint shop foreign matter, especially other paint, could have come in contact with it, marring its appearance. Thus the sequence of exclusion of other reasonable theories comes to an end and the chain is broken. Moreover, even if this barrier is somehow surmounted, does straightening the bent wheel mean heat was applied? In view of the testimony from all of Babbitt's subcontractors for wheel straightening that they never applied heat in their straightening process and that a pressure system is used, there is not even a probability of the ultimate fact which the jury could consider.

This state of the evidence, coupled with the direct testimony that Babbitt's never touched the wheel in question and that it was a spare, left the trial judge with no other choice than to direct a verdict in favor of the defendant, Babbitt's.

The judgment of the trial court is affirmed.

EUBANK, P. J., and STEVENS, J., concur.