**Joan Marie DRISCOLL, John Driscoll, and all others similarly situated, Plaintiffs,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**Lourece A. Farhat, and all others similarly situated, Plaintiffs,**

**v.**

**Allstate Insurance Company, Defendant.**

**Nos. 02–71358, 02–71955**

United States District Court, E.D. Michigan, Southern Division.

Aug. 30, 2002.

Kelly Nigohosian, Detroit, MI, Peter W. Macuga, II, David R. Dubin, Macuga & Liddle, Detroit, MI, for Plaintiffs.

James A. Smith, Diane L. Akers, Bodman, Longley, Detroit, MI, for Defendants.

### MEMORANDUM AND ORDER

COHN, Senior District Judge.

#### I. Introduction

These are two insurance disputes involving the same issue—whether or not the defendants' auto insurance policies compel payment of "diminished value" in addition

to the cost of repair. Plaintiffs in both cases are insureds who purchased first party collision and comprehensive automobile insurance from either State Farm Mutual Automobile Insurance Company (State Farm) or Allstate Insurance Company (Allstate). Both plaintiffs' cars were involved in accidents where the insurance companies elected to repair the car. Plaintiffs' cars were repaired and plaintiffs do not claim that the repairs were inadequate. Plaintiffs do, however, claim that in addition to compensating plaintiffs for the cost of repair, State Farm and Allstate are also obligated to pay for the diminution of value to plaintiffs' car as a result of being in an accident/being repaired.

Both plaintiffs filed class action complaints seeking to represent Michigan consumers who have purchased automobile insurance policies from defendants. No class has been certified and no motions for class certification have been filed. Both defendants have filed dispositive motions, which the Court scheduled for hearing together.

The issue regarding the obligation to pay for diminished value has been raised in other jurisdictions, with conflicting results.[1] Neither the Michigan courts nor any federal court in this district have interpreted the policy language at issue here or directly addressed whether diminution in value is a compensable loss.

After reviewing the conflicting authority and Michigan case law, the Court finds the better view is that the policy language, which limits coverage to the lesser of the costs of repair or replacement of the actual cash value of the car at the time of accident, does not include coverage for any diminished value to the car following a repair. Accordingly, State Farm's motion

for summary judgment or, in the alternative, for judgment on the pleadings and Allstate's motion to dismiss will be granted. The reasons follow.

### A.

In *Driscoll v. State Farm,* plaintiffs Joan Marie Driscoll and John Driscoll filed a complaint against State Farm Automobile Insurance Company (State Farm) claiming a breach of contract for State Farm's refusal to pay diminished value. In *Farhat v. Allstate,* Lourece A. Farhat, filed a similar complaint for breach of contract against Allstate. Both State Farm and Allstate removed the case to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332.

Both the Driscolls and Farhat argue that the policy language must be construed under Michigan law to include payment for diminished value. They also argue that the language is ambiguous that it, must be construed against defendants, and that the split of authority on the issue supports a finding that the language is ambiguous. They further argue that extrinsic evidence will support their position because such evidence will show that (1) defendants have interpreted their policies to include payment for diminished value and (2) other insurance companies, not defendants, have expressly excluded coverage for diminished value.

Both State Farm and Allstate argue that (1) the policy language is not ambiguous and expressly *limits* payment to either the actual cash value or the cost of repair or replacement, the latter of which does not include payment for any diminished value to the car; thus, there is no need to look to extrinsic evidence to create an ambiguity,

---

1. *See* L.S. Tellier, Annotation, *Measure of Recovery By Insured Under Automobile Collision Insurance Policy,* 43 A.L.R.2d 327 (1955)

(providing an overview of state law on the issue of recovery for diminished value; Michigan is not among the states discussed).

and they deny that they have interpreted their polices to pay for diminished value (2) accepting the plaintiffs' interpretation would render the policy language requiring State Farm and Allstate to pay the lower of the cost of repair or replacement mere surplusage. Under the plaintiffs' interpretation, State Farm has the option of paying either 1. the actual cash value, or 2. the cost of repair plus whatever sum it would take to equate actual cash value (diminution in value). This is no option at all: courts in other jurisdictions have rejected the interpretation that the plaintiffs argue for here, and (3) controlling Michigan Supreme Court authority, which provides that an insurer's liability must be determined in accordance with the contract, including the measure of damages, supports the finding that diminution in value is not a compensable loss.

## II. Facts

### A.

The relevant portion of the State Farm policy reads:

**Limits of Liability—Comprehensive and Collision Coverage**

The limit of our liability for *loss* to property or any part of it is the lower of:

1. the actual cash value; or

2. the cost of repair or replacement.

Actual cash value is determined by the market value, age, and condition at the time the *loss* occurred. Any deductible amount that applies is then subtracted.

The cost of repair or replacement agreed upon by *you* and us;

1. the cost of repair or replacement agreed upon by you and us;

2. a competitive bid approved by us; or

3. an estimate written based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area where the car is to be repaired as determined by a survey made by us. If you ask, we will indemnify some facilities that will perform the repairs at the prevailing competitive price. We will include in the estimate parts sufficient to restore the vehicle to its pre-loss condition. You agree with us that such parts may, include either parts furnished by the vehicle's manufacturer or parts from other sources including non-original equipment manufacturers.

Any deductible amount that applies is then subtracted.

### B.

The relevant portions of Allstate's policy reads:

**Standard Collision Insurance**

**Allstate** will pay for collision damage for **your** insured auto less the deductible. . . .

. . . .

**Payment of Loss By Allstate**

Allstate may pay for the loss in money, or may repair or replace the damaged or stolen property.

. . . .

**Limits of Liability**

Allstate's limit of liability is the actual cash value of the property or damages part of the property at the time of the loss. The actual cash value will be reduced by the deductible for each coverage as shown on the declarations page. However, our liability will not exceed what it would cost to repair or replace the property or part with other of the like kind and quality. . . . Actual cash value means there may be a deduction for depreciation

2 dummy

### III. Legal Standards

#### A. Motion to Dismiss

When analyzing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 1, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1039–40 (6th Cir.1991). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

"To survive a motion to dismiss ... a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.... [T]he court must consider as true the well-pleaded allegations of the complaint and construe them in the light most favorable to the plaintiff. However, [a] court need not accept as true legal conclusions or unwarranted factual inferences. In order for a dismissal to be proper, it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint." *Varljen v. Cleveland Gear Co.,* 250 F.3d 426 (6th Cir.2001) (internal citations and quotations omitted) (emphasis added).

#### B. Judgment on the Pleadings [2]

Fed.R.Civ.P. 12(c) provides that, "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

Judgment may be granted under Rule 12(c) where the movants clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. *Beal v. Missouri Pacific R.R.,* 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); 5 C. Wright & A. Miller, Federal Practice and Procedure (hereinafter Wright & Miller) § 1368, p. 518. All well-pleaded material allegations of the pleadings of the opposing party must be taken as true, while all contravening assertions in the movants' pleadings are taken as false. Given this standard, the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478 (6th Cir.1973); 5 Wright & Miller, § 1368, p. 520.

### IV. Analysis

#### A. Michigan law

The starting point is Michigan contract law. An indemnity contract (a policy of insurance) is construed in the same fashion as are contracts generally. *Triple E Produce Corp. v. Mastronardi Produce, Ltd.,* 209 Mich.App. 165, 172, 530 N.W.2d 772 (1995). As stated in *Klever v. Klever,* 333 Mich. 179, 186, 52 N.W.2d 653 (1952), *quoting McIntosh v. Groomes,* 227 Mich. 215, 218, 198 N.W. 954 (1924):

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate." However, when ascertaining the intent of the parties to a contract, "[i]t must not be supposed ... that an attempt is made to ascertain the actual mental processes of the parties to a particular contract. The law presumes that the parties understood the

---

2. Although State Farm styled its motion as a motion for summary judgment and alternatively as a motion for judgment on the pleadings, the Court treats State Farm's motion as a motion for judgment on the pleadings.

import of their contract and that they had the intention which its terms manifest. It is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties and then carry out that intention regardless of whether the instrument contains language sufficient to express it; but their sole duty is to find out what was meant by the language of the instrument."

... We must look for the intent of the parties in the words used in the instrument. This court does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning. *See also Zurich Ins. Co. v. C.C.R. and Co.,* 226 Mich.App. 599, 604, 576 N.W.2d 392 (1997) (stating, "[w]here the terms of a contract are unambiguous, their construction is for the court to determine as a matter of law, and the plain meaning of the terms may not be impeached with extrinsic evidence. (citations omitted))." The Michigan Court of Appeals in *Zurich* went to say:

It is beyond doubt that the actual mental processes of the contracting parties are wholly irrelevant to the construction of contractual terms. Rather, the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms. Accordingly, a written contract is construed according to the intentions therein expressed, when those intentions are clear from the face of the instrument.

226 Mich.App. at 604, 576 N.W.2d 392 (citations omitted).

In *Carter v. State Farm Mutual Auto. Ins. Co.,* 350 Mich. 535, 87 N.W.2d 105 (1957) a case heavily relied on by both State Farm and Allstate, plaintiffs sued

State Farm to recover damages for failure to comply with the terms of the policy. The policy, dated December 19, 1955, provided:

Coverage G—Deductible Collision. TO pay for loss to the automobile caused by collision with another object or upset of the automobile but only for the amount of each such loss in excess of the deductible amount state in the declarations as applicable hereto.

Limits of Liability—Settlement Options—

Coverage D, E, F and G. The limit of liability for loss to the automobile or part thereof shall not exceed the actual cash value nor what it would cost to repair or replace the authomoblie [sic] or part with like kind and quality, less depreciation and deductible amount applicable.

The company may pay you for the loss in money or may repair or replace the automobile or such part thereof as aforesaid, or may return any stole property with payment for any resultant damage thereto at any time before the loss paid or the property is so replaced, or may, take all or such part of the automobile at the agreed value but there shall be no abandonment to the company.

The plaintiffs' car was involved in an accident with another car, the owner of which carried insurance with defendant. Defendant elected to repair the car, but plaintiffs apparently wanted a money settlement. Defendant had the car taken to a garage where some repairs were done and plaintiff later picked up the car. However, plaintiffs later contacted defendant indicating that it was not fully repaired, at which point defendant told plaintiff to return it to the garage. Plaintiffs did not return the car, so the additional repairs plaintiff claimed were needed were never done. Plaintiffs sued defendant, claiming that the

car was not satisfactorily repaired. The case went to trial. Plaintiffs called two witnesses familiar with car prices. They testified that before the accident the car was worth $2,800.00 and after the accident it was worth only $1,800.00. Each witness indicated that in placing such value on the car he had taken into consideration the fact that it had been involved in an accident. Neither witness testified to the cost in making the additional repairs that plaintiffs contended were necessary in order to comply with the terms of the policy. Plaintiffs claimed, as part of its measure of damages, "that the difference in value [to the car] before the accident and the value at the time of the appraisal by plaintiffs' witnesses was the proper measure of damages." The trial court rejected the contention. Plaintiffs appealed on this and other issues. The Michigan Supreme Court held:

> In the instant case the policy of insurance indicates the measure of liability that the parties must be presumed to have had in mind in its execution. The liability of defendant for loss to an automobile or part thereof is so limited by the contract that it 'shall not exceed the actual cash value nor what it would then cost to repair or replace the automobile or part with like kind and quality, less depreciation and deductible amount applicable.' The liability of defendant must be determined in accordance with the contract, and damages for failure to observe the obligation thereby imposed must be measured accordingly.

*Carter*, 350 Mich. at 540–41, 87 N.W.2d 105.

Plaintiffs rely on *Wetzel v. Cadillac Mut. Ins. Co.*, 17 Mich.App. 57, 169 N.W.2d 128 (1969) for the proposition that in construing "similar insurance contract language," the Michigan Court of Appeals held that "the restoration of value and not merely condition is required under a standard automobile indemnity policy." Both Allstate and State Farm argue that *Wetzel* is inapplicable.

In *Wetzel*, the insured's car was stolen and later involved in a collision while being driven by the thief. After the accident, the driver of the other car involved in the accident invoked a state law provision (under South Carolina law—where the accident occurred) which permitted the insured's car to be attached as security for his damages. The car was later sold at public auction. The question was whether the insured was covered under the policy, which provided:

> To pay for loss of or damage to the automobile, hereinafter called loss, caused by theft, larceny, robbery or pilferage, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto unless the entire automobile is taken, in which the event the deduction shall not be made.

The trial court found that the theft of the insured's car was a "theft or larceny" under the policy and that the insured was entitled to coverage. The court of appeals affirmed, stating in part:

> The proper construction of the policy is that it covers all damage resulting, or which, in the contemplation of the parties, might result, from theft, which would include damages caused by reckless driving or handling of the car and storage of the same, or any use which destroyed its value in whole or part. *Callahan v. London & Lancashire Fire Insurance Company, Limited* (1917), 98 Misc. 589, 163 N.Y.S. 322, affirmed 179 App.Div. 890, 165 N.Y.S. 1079.

> The insurer is liable for the diminution in value caused by the wrongful use of the one converting the car. 5 Apple-

man, Insurance Law and Practice, § 3217.

As a result of the wrongful use by the thief in this case, plaintiff's automobile was attached and rendered unrecoverable. Plaintiff, under the insurance policy, was entitled to be made whole. The extent of his loss was the value of his automobile in its pre-theft condition.

*Wetzel,* 17 Mich.App. at 61–62, 169 N.W.2d 128.

State Farm and Allstate are correct that *Wetzel* does not support plaintiffs' argument that they are entitled to coverage for diminution in value. *Wetzel* construed a policy provision for *theft coverage.* *Wetzel* stands for the proposition that under Michigan law when a car is stolen, the insured is entitled to the value of the car as part of damages under the theft provision in the policy. Nothing in *Wetzel* addresses whether a limitation on coverage provision, such as the ones at issue here, also provides coverage for diminution in value, nor does *Wetzel* apply to the situation where the car is repaired and returned.

Indeed, *Carter,* discussed above, is the only relevant Michigan case on the question of whether diminished value is a covered loss when a car is repaired, although admittedly the issue of diminished value was not directly addressed. However, the policy language in *Carter* is nearly identical to the policy language at issue here and the Michigan Supreme Court rejected the notion that "the difference in value before the accident and the value at the time of

the appraisal was the proper measure of damages" and instead applied the contractual limitation of liability provisions, which limited liability to the cost of repairs. Thus, it appears that *Carter* supports a finding that diminution in value is not automatically or inherently a compensable loss; it is the policy language which controls.[3]

## B. Other jurisdictions

As noted above, this issue has been raised in courts throughout the country with conflicting results. State Farm and Allstate have been defendants in some of these cases and have lost. Instead of a recitation of the numerous cases, only a few select cases which provide representative views of both sides of the issue will be discussed.

### 1. State Farm and Allstate's cases

Although State Farm cited a number of cases, in *O'Brien v. Progressive Northern Ins. Co.,* 785 A.2d 281 (Del.2001), the Supreme Court of Delaware, construing nearly identical policy language, held that the policies did not cover diminished value. The policy provided:

1. The Limit of Liability for loss to a covered vehicle or non-owned vehicle will be the lowest of:

a. the actual cash value of the stolen or damaged property at the time of loss, reduced by the applicable deductible shown on the Declarations Page, and by its salvage value if you retain the salvage;

where the cost of repairs or replacement, not exceeding the actual cash value of the car that the time of the loss, was held to be the correct measure of damages, it was error to instruct the jury that they could consider the actual cash value before and after the loss.[18]

Footnote 18 references the Michigan Supreme Court's decision in *Carter.*

---

**3.** Notably, Appleman, Insurance Law & Practice § 3883, under the heading "Cost of Repair or Replacement," reads:

Many automobile policies contain provisions fixing the cost of repair or replacement as the measure of the insurers' liability.[17] Under this rule, the insured could not recover the difference between the value of the car before and after the loss. And

b. the amount necessary to repair or replace the stolen or damaged property with other property of like kind and quality, reduced by the applicable Deductible as shown on the Declarations Page; or

c. any applicable Limit of Liability or Stated Amount Vehicle Coverage shown on the Declarations Page, reduced by the salvage value if you retain the salvage.

(emphasis omitted). The Delaware Supreme Court found in favor of the insurer, explaining:

We conclude that the language "repair and replace" is not ambiguous and that this language does not contemplate payment for diminution of value. In the common usage, the word "repair" means to fix by replacing or putting together what is broken, or, as the court in *Carlton v. Trinity Universal Ins. Co.* stated, "to bring back to good or useable condition." This definition of repair does not require the insurer to restore the vehicle to factory condition or even to the condition of the vehicle before the accident. Therefore, a claimant is precluded from recovering the amount of any reduction in the market value of the automobile due to factors that are not subject to either repair or replacement. Under the "repair or replace" limitations on the policy, the insurer's liability to a claimant is "capped at the cost of returning the damaged vehicle to substantially the same physical, operating, and mechanical condition as existed before the loss." This obligation includes neither diminution in value resulting from a "market psychology" nor that resulting from the minute physical imperfections that are inherent to any repair, so long as repairs have been completed in a workmanlike manner and the vehicle has been returned to substantially the same form as before the accident.

Ascribing to the phrase "repair or replace" an obligation to compensate the insured for things that cannot reasonably be repaired or replaced violates the most fundamental rule of contract construction. Our courts must give effect to the intent of the parties as it is expressed in the language of the written policy. Thus, the Delledonne Court erred in finding that the purpose of an auto insurance policy is to "compensate the insured in full for any loss or damage to his automobile less any deduction specified." The actual purpose of an insurance policy is to compensate the insured to the extent of the agreed upon policy terms. In the case of the policies before this Court, those agreed upon terms give the insurer the option of paying the lesser of the cost of the vehicle before the accident or the cost of repairing the vehicle to substantially the same physical, operating, and mechanical condition as existed before the accident. Thus we find that the terms "repair or replace," in the context of these insurance contracts, are not reasonably or fairly susceptible to different interpretations or that they may have two or more different meanings, and are therefore unambiguous.

In conclusion, the terms of an insurance contract are to be read as a whole and given their plain and ordinary meaning. A plain reading of the limits on liability in the policies in question unambiguously give the insurers the option to choose between the cost of repair or the full value of the vehicle before the covered damage occurred. To give full effect to this option, this Court can only assign one meaning to the terms "repair or replace." Under this provision the insurer is obligated to repair or replace vehicle parts only to the extent neces-

sary to return the automobile to substantially the same physical, operating, and mechanical condition as before the covered incident. Therefore we AFFIRM the rulings of the Superior Court.

*O'Brien,* 785 A.2d at 291 (footnotes omitted). The Delaware Supreme Court also rejected the insured's argument, which plaintiffs make here, that the conflicting authorities indicate that the policy language is ambiguous:

> Appellants argue that the mere fact that a number of courts nationwide have reached different and contradictory conclusions about the meaning of policy terms nearly identical to those before us in this case creates an ambiguity. This contention, while seductive, is without merit. The Delledonne Court, cited by Appellant, incorrectly stated Delaware law by finding that the existence of two separate and distinct lines of authority in the interpretation of similar policy language is evidence of ambiguity. The duty of the courts is to examine solely the language of the contractual provisions in question to determine whether the disputed terms are capable of two or more reasonable interpretations. In so doing, Delaware courts are obligated to confine themselves to the language of the document and not to look to extrinsic evidence to find ambiguity. A mere split in the case law concerning the meaning of a term does not render that meaning ambiguous in the Delaware courts.

*Id.* at 289 (footnotes omitted).

State Farm also cites *Pritchett v. State Farm,* —— So.2d ——, 2002 WL 254007 (Feb. 22, 2002), where the Alabama Court of Civil Appeals found identical language to that at issue here to be unambiguous to not cover diminished value. This case also gives a good overview of the conflicting authority. After examining the policy as a whole, including the provision on limiting liability, the Alabama Court of Civil Appeals explained:

> Black's Law Dictionary 1298 (6th ed.) defines the term "repair" as meaning "to mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction." "Repair" has been defined as "to restore by replacing a part or putting together what is torn or broken: Fix." Merriam–Webster's Collegiate Dictionary (10th ed.). "In the common usage, the word 'repair' means to fix by replacing or putting together what is broken, or, as the court in *Carlton v. Trinity Universal Ins. Co.,* [32 S.W.3d 454 (Tex.Ct.App.2000)], stated, 'to bring back to good or useable condition.'" *O'Brien v. Progressive N. Ins. Co.,* 785 A.2d 281, 290 (Del.2001). The various definitions of repair do not discuss the concept of value. We do not believe that in its common usage, the term "repair" is understood to encompass the concept of value or require a restoration of value. "[A] return to market value is not what the words 'repair' and 'with like kind and quality' commonly connote and is not what an ordinary insured would reasonably understand the phrase to mean." *Siegle v. Progressive Consumers Ins. Co.,* 788 So.2d 355 (Fla.Ct.App. 2001).
>
> Further, the policy provides that State Farm's liability to repairing a damaged automobile is the cost to "restore the vehicle to its pre-loss condition"; the policy does not provide for a restoration of value. In other sections of the insurance policy at issue in this appeal, the word "value" is used to define the insurance coverage provided under that portion of the policy. Therefore, it is clear that State Farm was aware of the concept of value and had

used that term to define the limits of other areas of coverage it provided under the insurance policy.

Also, the insurance policy at issue in this appeal provides State Farm with the option of paying the actual cash value of the damaged automobile or repairing or replacing its parts. The interpretation of that provision advanced by Pritchett would negate the choice State Farm has under that provision and would require State Farm to pay the actual cash value of the damaged automobile in every case.

After reviewing the insurance policy as a ✦whole, we find no uncertainty in the language or terms of the insurance policy, and we agree with the trial court that when viewed as a whole, the language of the insurance policy is unambiguous. *See Celtic Life Ins. Co. v. McLendon, supra; Southern Sash of Columbia v. United States Fid. & Guar. Co.,* 525 So.2d 1388 (Ala.1988). *See also State Farm Fire & Cas. Co. v. Slade,* 747 So.2d at 309 ("a court cannot consider the language in the policy in isolation, but must consider the policy as a whole."). The insurance policy at issue provides that State Farm may elect to repair the damaged automobile; it does not impose any liability upon State Farm to pay an amount beyond the cost of those repairs in order to restore the value of the automobile.

A number of other jurisdictions have considered language in insurance policies similar to that at issue in this appeal in determining whether an insured may recover from its insured [sic] an amount representing the diminished value of an automobile after the automobile has been wrecked and repaired. There is a split in authority among the various jurisdictions regarding the resolution of that issue.

*Pritchett,* —— So.2d at ——, 2002 WL 254007 at *6.

Allstate heavily relies on three state cases, from Alabama, Minnesota, and Florida. State Farm was a defendant in all of these cases and prevailed. In *Sahagun v. Allstate,* No. CV–2000–520–R (Ala.Cir.Ct. Aug. 15, 2001), which is reminiscent of this case, plaintiffs brought a putative class action arguing that Allstate's policy also covered the diminished value to their cars after repair. Allstate argued, as it does here, that the unambiguous policy language capped plaintiffs damages at the cost of repair. The Alabama court, interpreting *the same language here,* held:

Under the Sahagun's policy, Allstate's liability for collision and comprehensive coverage is expressly limited to the lesser of (a) the "actual cash value" or (b) "what it would cost to repair or replace the property or part with other of like kind and quality." By paying for repairs to the plaintiff's vehicle, the nature and quality of which plaintiffs have not challenged, Allstate completely fulfilled its obligations under the plaintiffs' policy.

The court in *Sahagun* also noted that its decision was "in accord with those of courts from a majority of jurisdictions to have considered the issue, which have repeatedly found that an insured is not entitled to recover diminished value under an automobile insurance policy that, like Allstate's expressly limits the insurer's liability to the cost of repairs."

### 2. Plaintiffs' cases

Plaintiffs are also not without supportive case law. In particular, plaintiffs rely on *State Farm v. Mabry,* 274 Ga. 498, 556 S.E.2d 114 (Ga.2001), where the Georgia Supreme Court interpreted the language in the same State Farm policy at issue here and found that State Farm was re-

sponsible for paying diminished value. The court explained:

> Having reviewed both Georgia law and that of other jurisdictions, we adhere to the long-standing contract interpretation set forth in the Georgia decisions discussed above. The rationale of those cases remains solid: the insurance policy, drafted by the insurer, promises to pay for the insured's loss; what is lost when physical damage occurs is both utility and value; therefore, the insurer's obligation to pay for the loss includes paying for any lost value. That interpretation has stood for 75 years in Georgia and has become, therefore, part of the agreement between the parties when they enter into a contract of insurance which includes the promise to pay for the insured's loss. Thus, our holding in this case that State Farm is obligated to pay for diminution in value when it occurs is based in reason, precedent, and the intent of the parties. Recognition of diminution in value as an element of loss to be recovered on the same basis as other elements of loss merely reflects economic reality.

*Mabry*, 274 Ga. 498 at 508, 556 S.E.2d 114 (citation omitted).

Plaintiffs also point to *Hyden v. Farmers Ins. Exchange*, 20 P.3d 1222 (Co.Ct. App.Div. IV 2001) where the Colorado court focused on the phrase "of like kind and quality," which appears in the Allstate policy, but not the State Farm policy, to find that the insurer must also pay for diminished value. The Colorado Court, Appellate Division IV, stated:

### A. Of Like Kind and Quality

Farmers argues that it complied with the "of like kind and quality" language when it had plaintiff's Jeep repaired to a point where it functioned as it did before the accident. Plaintiff argues that the language requires, in addition, that the repaired Jeep have a fair market value similar to that which it had prior to the accident. We agree with plaintiff. Initially, we note that, during oral argument, Farmers explained that the "of like kind and quality" phrase obliged it only to return the Jeep to plaintiff in "substantially the same condition as it was before the accident." Yet, according to one leading commentator, "A vehicle is not restored to substantially the same condition if repairs leave the market value of the vehicle substantially less than the value immediately before the collision." L. Russ, Couch on Insurance 3D § 175:47 at 175–54 (1998). We agree with this commentator.

The phrase "of like kind and quality" does not, in our view, unambiguously support Farmers' position that it was obligated only to restore plaintiff's Jeep to a functioning capacity. Indeed, the term "quality" can have a meaning different from the word "kind," Webster's Ninth New Collegiate Dictionary 661 & 963 (1991), and it often conveys "a degree of excellence" or "a superiority in kind." Webster's Ninth New Collegiate Dictionary 963 (1991). Because the words "kind" and "quality" are joined together by "and" rather than by "or," ordinary purchasers of insurance could reasonably expect Farmers to provide them with vehicles substantially equivalent in both function and value to those which they drove prior to any accidents.

In our view, the phrase "of like kind and quality" is ambiguous because it fails to specify the protections afforded by the policy. Accordingly, it must be construed in favor of plaintiff and against Farmers. *See State Farm Mutual Automobile Insurance Co. v. Stein, supra* (public policy requires insurers to disclose fully and fairly to insureds what insurance protection is being provided

for premium charged); *State Farm Mutual Automobile Insurance Co. v. Nissen,* 851 P.2d 165, 167 (Colo.1993) ("[t]he objectively reasonable expectations of applicants ... regarding the terms of insurance contracts will be honored....").

Other courts which have addressed an insurer's obligation to repair, or replace with, a vehicle of "like kind and quality" have found the obligation violated if repairs leave the vehicle's market value substantially less than the market value it had immediately before the accident. *See Boyd Motors, Inc. v. Employers Insurance,* 880 F.2d 270 (10th Cir.1989) (applying Kansas law); *Delledonne v. State Farm Mutual Automobile Insurance Co.,* 621 A.2d 350 (Del.Super.Ct.1992); *United States Fire Insurance Co. v. Welch,* 163 Ga.App. 480, 294 S.E.2d 713 (1982); *Campbell v. Calvert Fire Insurance Co.,* 234 S.C. 583, 109 S.E.2d 572 (1959); *Northwestern National Insurance Co. v. Cope,* 448 S.W.2d 717 (Tex.Civ.App.1969). *But see Johnson v. State Farm Mutual Automobile Insurance Co.,* 157 Ariz. 1, 754 P.2d 330 (Ariz.App.1988) ("like kind and quality" contemplates restoration of physical condition rather than restoration of value); *Ray v. Farmers Insurance Exchange,* 200 Cal.App.3d 1411, 246 Cal. Rptr. 593 (1988) (same); *General Accident Fire & Life Assurance Corp. v. Judd,* 400 S.W.2d 685 (Ky.1966) (same).

Consequently, we hold that when an automobile insurer promises to provide an insured with a vehicle "of like kind and quality," the insurer must provide the insured, through repair, replacement, and/or compensation, the means of acquiring a vehicle substantially similar in function and value to that which the insured had prior to his or her accident.

In this case, there is a genuine issue of material fact as to whether this has occurred.

*Hyden,* 20 P.3d at 1224–25.

## C.  In The End

■ Having considered the conflicting authority from other jurisdictions and the limited case law in Michigan, the Court recognizes that its role as a federal court sitting in diversity jurisdiction in circumstances such as this is to determine what the Michigan Supreme Court would determine Michigan law to be.  In so doing, the Court is of the opinion that the better view is that neither the State Farm nor the Allstate policies require payment for diminution in value even though, as stated at the hearing, the Court could take judicial notice of the fact that a car has less value after it has been repaired.  First, the language of the provisions themselves expressly limit coverage to the *lesser* of the actual value or the cost of repair.  This is not ambiguous language.  The insured must pay for either the actual value of the car or the cost of repair, whichever is less. These are alternatives and do not include the addition of an obligation to pay for diminished value to the car.  Reading into the cost of repair a requirement to also pay for diminished value would render the limitation provision meaningless, as the insurer would essentially always pay for the value of the car.  Second, because then provisions are unambiguous, there is no need to look to extrinsic evidence so as to create an ambiguity.[4]  Third, the fact that

---

4.  At the hearing, plaintiffs' counsel offered as an exhibit a copy of an insurance policy from another insurer, not a defendant, which contained language expressly excluding coverage for diminution in value.  Although the Court reviewed the exhibit, over defendants' objection, it is of no avail to plaintiffs.  The Court could surmise that the addition of such language to that and other insurance policies, including defendants, is simply a reaction to

courts in other states, interpreting their own law, have reached a different conclusion does not create an ambiguity. Finally, as discussed above, the limited authority in Michigan supports a finding that damages for diminished value is not available to plaintiffs in these circumstances.

### V. Conclusion

State Farm's motion for judgment on the pleadings is GRANTED.

Allstate's motion to dismiss is GRANTED.

Plaintiffs' complaints in both cases are DISMISSED.

SO ORDERED.

recent litigation. In any event, it does nothing to advance plaintiffs' case. As it has been said, "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Bank,* 335 U.S. 595, 600, 69 S.Ct. 290, 93 L.Ed. 259 (1949) (Frankfurter, J., dissenting).