17552

Eugene T. CAMPBELL, Respondent, v. CALVERT FIRE
INSURANCE COMPANY, Appellant

(109 S. E. (2d) 572)

584

*Messrs. William H. Blackwell,* of Florence, and *Ney B. Steele,* of Chesterfield, *for Appellant,*

F. *Turner Clayton, Esq.,* of Cheraw, *for Respondent,*

July 8, 1959.

OXNER, Justice.

This is an action on a policy issued by the Calvert Fire Insurance Company indemnifying plaintiff, Eugene T. Campbell, against loss or damage to his automobile by collision or upset.

The fact that there was a collision is admitted. Plaintiff alleged that his automobile "was destroyed" and sought judgment for $1,350.00, which he alleged was its value. The Company denied that the automobile was damaged to this extent; alleged that plaintiff, in violation of the terms of the policy, had the automobile repaired before reporting the loss, thereby denying it a reasonable opportunity of inspecting the car and determining the damage; and further alleged that the automobile had been completely repaired at a cost of $421.18, which it had offered to pay, less the $50.00 deduction specified in the policy. The trial resulted in a ver-

dict for the plaintiff in the sum of $1,150.00. From the judgment entered thereon, defendant has appealed.

We shall first consider whether the Court erred in refusing defendant's motion for a nonsuit and later for a directed verdict, upon the ground that plaintiff, in violation of the terms of the policy, caused said automobile to be repaired before it had an opportunity to examine it, and failing in that motion, that recovery be restricted to the sum of $371.18, representing the amount of the repair bill less the $50.00 deductible.

The collision occurred in Suffolk, Virginia, on May 27, 1956. While plaintiff was waiting for a signal light, another car came up and ran into the rear of his Ford, knocking it into the rear of the car stopped in front of him. Soon thereafter plaintiff returned to his home in South Carolina and left the car in charge of his son who lived at Portsmouth, Virginia. The car was towed to a service station and about a week later taken to a repair shop in Suffolk operated by J. W. Gordon. Gordon says that plaintiff's son left him "under the impression" that he was to repair the automobile. Both plaintiff and his son denied they ever authorized Gordon to repair the car. On the contrary, the son testified that Gordon was specifically told not to do anything to the car until he received further instructions. Be that as it may, Gordon went ahead and repaired the car at a cost of $421.18. About four or five weeks after the accident, Gordon notified plaintiff's son that the repairs had been completed and asked him to examine the car. Plaintiff's son says that although he told Gordon he had no authority to pass on the repairs, he did drive the car and found that it didn't "crank right"; that the gears were "hard to change"; that the car was "real hard to steer"; that the back wheels were out of line; and that the paint on the car "was still a little rough." He admitted, however, that none of this was called to Gordon's attention and that he made no complaint otherwise. At the time of the trial the repair bill had never been paid and the car was still in Gordon's possession.

There is a conflict in the testimony as to when the plaintiff reported the collision to the insurance company. Plaintiff testified that he reported it about four weeks after it occurred and that he did not do so earlier because he was trying to get a settlement from the driver of the car who hit him from the rear. The Company contends that the collision was not reported until July 7th. A few weeks later the Company's adjuster at Portsmouth inspected the car. He testified that after a careful examination he found that it had been properly repaired and was "in perfect condition". He then sent his file to the adjuster in Charlotte who contacted the plaintiff during the early part of August and offered to pay the repair bill less the deductible sum of $50.00 but plaintiff declined to settle on this basis. Shortly thereafter this action was commenced.

There was clearly no error in refusing the motion for a directed verdict upon the ground that plaintiff caused the car to be repaired before the Insurance Company had an opportunity of inspecting it and determining the damage. Assuming that this would constitute a violation of the terms of the policy, the overwhelming weight of the evidence is to the effect that Gordon made these repairs without the knowledge or authorization of plaintiff and the repair job was accepted and approved by the Insurance Company. Equally without merit is the contention that the Court should have granted the Company's request for a peremptory instruction limiting the amount of recovery to the repair bill less a deduction of $50.00. The testimony is conflicting on the question as to whether the car was properly repaired and substantially restored to the same condition it was in prior to the collision, which necessitated the submission of this issue to the jury.

It is further contended that the Court erred in refusing a motion for judgment *non obstante veredicto* upon the ground that the plaintiff failed to give the Insurance Company notice of the collision as soon as practicable after the occurrence, as required by the policy.

That question was not raised in the pleadings, was not included among the grounds for a directed verdict and was raised for the first time during the charge of the trial Judge. It was stated in *Standard Warehouse Co. v. Atlantic Coast Line Railway Co.,* 222 S. C. 93, 71 S. E. (2d) 893, 897, that a motion for judgment *non obstante veredicto* "simply takes us back to the point in the trial when a motion was made for a directed verdict, and is limited to those grounds". Therefore, the alleged failure to give notice of the collision as soon as practicable cannot now be urged as a ground for directing a verdict. However, since for the reasons hereinafter stated there must be a new trial and the question may arise again, we have no hesitancy in saying that under the evidence a motion for a directed verdict could not be granted on this ground. We had occasion recently in *Brown v. State Farm Mutual Insurance Co.,* 233 S. C. 376, 104 S. E. (2d) 673, 676, to discuss the meaning of a phrase in an insurance policy requiring notice of an accident "as soon as practicable". Assuming in the instant case that the notice was not given as soon as practicable, there is abundant evidence of waiver of this provision. *Phillips v. Equitable Life Assurance Society of the United States,* 183 S. C. 431, 191 S. E. 226; *American Mutual Fire Insurance Co. v. Green,* 233 S. C. 588, 106 S. E. (2d) 265; *Lusk v. American Century Insurance Co.,* 80 W. Va. 39, 91 S. E. 1078; *American Automobile Insurance Ass'n v. Folsom,* 119 Fla. 295, 161 So. 434; *Lewis v. Fire Ass'n of Philadelphia,* 7 Cir., 183 F. (2d) 647; Annotation 18 A. L. R. (2d) 487. As previously pointed out, the first time that any contention was made that notice of the collision was not given as soon as practicable was on the trial of the case. At no time prior thereto was there any suggestion of violation of this policy provision. There was never any denial of liability by the Company on this ground. On the contrary, the Company approved the repairs that had been made by Gordon and offered to settle on this basis.

The only other question we need consider is whether the Court erred in failing to grant a new trial upon the ground that the verdict was not supported by the evidence and not responsive to the Court's instructions as to the measure of damages.

The policy provides:

"The limit of the company's liability for loss shall not exceed either (1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss or (2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, or (3) the applicable limit of liability stated in the declarations.

"The company may pay for the loss in money or may repair or replace the automobile or such part thereof, as aforesaid.  *   *   *".

Plaintiff pitched his action upon the theory of a total loss. He testified that his car, a 1953 two door 6 cylinder Ford, purchased new and driven in excess of 60,000 miles, was worth $1,350.00 at the time of the collision. The only testimony offered by the plaintiff on the question of damages was his own testimony as follows:

"Q. Did you look at your car after it was wrecked, Mr. Campbell? A. Yes, sir; I did.

"Q. Would you tell the jury what damage was done to the front end of it? A. Well, the front end was mashed in; the bumper was knocked out on the righthand front wheel; the wheel was torn out. The radiator was busted. The motor was knocked a'loose from the motor supports. The side of the car was bulged out. Front door glasses cracked. And the back end of it was all smashed in. Gas tank knocked loose and busted. And the rails was bent up. And the seats in the back was knocked loose and the back on the front seat was broken off.

"Q. After that car was wrecked, what was it worth? A. Well, I just don't figure it was nothing hardly at all.

\* \* \* \* \*

"Q. Will you tell this jury whether or not that car could have been repaired and put back in first class condition? A. Well, gentlemen, I don't think could no way at all because I have owned one or two that I bought and I couldn't drive them and carried them back and reworked them. The rails was bent up and they never drive right nor nothing else at all. The body was just beyond any repair on it without a whole lot of (bounce, overbalance) and one thing and another."

Counsel for the Insurance Company objected to plaintiff's testimony as to the value of the car at the time of the collision upon the ground that there was no evidence that it was wrecked beyond repair and reserving this objection, offered testimony to the effect that its value prior to the collision was only $750.00 or $800.00. It was the Insurance Company's contention that the loss was only a partial one and the measure of recovery was the cost of repairing and restoring the car to its condition before the collision. In support of this contention, testimony was offered to the effect that the car had been completely repaired and was in as good condition as it was prior to the collision.

We do not think plaintiff's testimony is sufficient to sustain a recovery on the basis of a total loss. No mechanic testified that the car was not reparable. Plaintiff himself made no detailed examination.. His opinion that after the wreck the car was worth "nothing hardly at all" is a general conclusion from a mere casual examination made immediately after the collision. He admitted that he has not seen the car since. It was apparently his view that no wrecked car could be restored to its former condition and that in case of any substantial damage, an award should be made for the full value of the car, regardless of whether it could be repaired. In holding that testimony of this nature was insufficient to sustain a verdict for a total loss, the Court

in *Niagara Fire Ins. Co. v. Huffman,* Ky., 253 S. W. (2d) 617, 619, said: "It was incumbent upon appellee to show by specific facts, and not by generalizations of a purely descriptive nature, that the car was a total loss as a result of the collision. Appellee's proof, as a whole, merely set forth sweeping statements as to the physical damage done to the automobile, and obviously this type of evidence could be of no probative value in establishing the fact that the car was not reparable." To the same effect, see *Motors Insurance Corporation v. Smith,* 218 Miss. 268, 67 So. (2d) 294.

Moreover, the verdict is not responsive to the Court's instructions. The trial Judge charged that the measure of damages would be "such amount as it would take to repair or replace the automobile in the condition that it was immediately before the collision". There is no evidence to support a verdict of $1,150.00 under this instruction. The amount found is purely speculative and without evidentiary support.

Since there must be a new trial, we deem it proper to discuss the measure of damages. The purpose of a policy of this kind is to compensate the insured in full for any loss or damage to his automobile less any deduction specified. Under its terms, the Company has the option after a collision of having the automobile repaired. As pointed out in *Rossier v. Union Automobile Insurance Co.,* 134 Or. 211, 291 P. 498, 500, "In many instances the injury to the automobile may be of such nature and extent that, after repairs have been made, there will be no diminution of value. Under such circumstances the cost of repairs would be equivalent to the difference between the value of the automobile before and after collision". But as there pointed out, restoration of the car to its former condition "may or may not be accomplished by repair or replacement of broken or damaged parts. It cannot be said that there has been a complete restoration of the property unless it can be said that there has been no diminution of value after repair of the car." In *American Standard County Mutual Insurance*

*Co. v. Barbee,* Tex. Civ. App., 262 S. W. (2d) 122, 123, the Court said: "The words 'repair' and 'replace' used in a policy of this kind mean the restoration of the automobile to subtasntially the same condition in which it was immediately prior to the collision and it would not be restored to the condition if the repairs left the market value of the automobile substantially less than the value immediately before the collision."

These principles were recognized and followed in *Padgett v. Calvert Fire Insurance Co.,* 223 S. C. 533, 77 S. E. (2d) 219. We there held that under a collision policy similar to the one now under consideration, the insured was entitled to have the automobile placed in as good condition as it was prior to the collision, and where after repairs, the engine did not function properly, insured was entitled to the cost of a new motor.

It follows from the foregoing that where there is a ██ partial loss and the automobile can be repaired and restored to its former condition and value, the cost of repairs is the measure of liability, less any deductible sum specified in the policy. But if, despite such repairs, there yet remains a loss in actual value, estimated as of the collision date, the insured is entitled to compensation for such deficiency. Under these circumstances some courts adopt as the measure of damages the difference between the fair cash value of the car before and after the collision. *Rossier v. Union Automobile Ins. Co., supra,* 134 Or. 211, 291 P. 498; *Dunmire Motor Co. v. Oregon Mutual Fire Insurance Co.,* 166 Or. 690, 114 P. (2d) 1005; *National Farmers Union Property & Casualty Co. v. Watson,* Okla., 298 P. (2d) 762, and cases therein cited. Other courts achieve substantially the same result by adding any diminution in value to the cost of repairs. *Potomac Insurance Co. v. Wilkinson,* 213 Miss. 520, 57 So. (2d) 158, 43 A. L. R. (2d) 321; *American Standard County Mutual Insurance Co. v. Barbee, supra,* Tex. Civ. App., 262 S. W. (2d) 122, 124. In the last mentioned case the insurer had the auto-

mobile repaired and tendered it to the insured who refused to accept it, contending that the car had not been properly repaired. The Court held that the measure of damages was as follows: "Since the repairs did not substantially restore the automobile to its former condition and value, the proper measure was the difference in the value of the automobile before it was wrecked and after it was wrecked, repaired and tendered to the plaintiff."

Either of the foregoing methods assures fair protection under a policy of this kind. Which of the two is preferable depends largely upon the facts of the particular case. Of course, under either there should be deducted any amount specified in the policy.

Judgment reversed and case remanded for a new trial.

STUKES, C. J., and TAYLOR, LEGGE and Moss, JJ., concur.