## 18762

Mamie M. LUMPKIN, Respondent, v. ALLSTATE INSURANCE COMPANY, Appellant

(159 S. E. (2d) 852)

*Messrs. Watkins, Vandiver, Kirven, Long & Gable* of Anderson, *for Appellant,*

*Messrs. W. Jerry Fedder and Edward H. Ninestein,* of Walhalla, *for Respondent,*

Feb. 26, 1968.

Bussey, Justice.

In this action for conversion of an automobile the jury returned a verdict for the plaintiff for $1,300 actual damages and $3,000 punitive damages. Appeal is from an order of the trail court denying defendant's motion for judgment *non obstante veredicto,* it being contended by the defendant that the evidence was insufficient, in several particulars, to prove a conversion.

It is elementary that, in considering whether defendant was entitled to a judgment *non obstante veredicto,* all of the evidence, and the inferences reasonably deducible therefrom, have to be viewed in the light most favorable to the plaintiff. We, accordingly, proceed to state the facts disclosed by the record, and the inferences reasonably deducible therefrom, in the light of the foregoing principles.

On September 25, 1965, plaintiff was the owner of a 1964 Plymouth sedan automobile which was only thirteen months old and which had a market value of $3,000. The said automobile was insured with the defendant under a policy which, among other things, afforded plaintiff one hundred dollar deductible collision coverage. On the night of Septem-

ber 25th plaintiff's automobile was in a collision, as a result of which the entire right side thereof was demolished. The driver of a wrecker who came to the scene took the plaintiff's automobile to a place of business known as Sanders Body and Fender Shop in Seneca, South Carolina, operated by a Mr. Hollis Hunnicutt. Such was done without either the express permission or objection of plaintiff. Plaintiff was uncertain what to do with her car in its wrecked condition. The wrecker driver told her that Sanders' place was where he usually took wrecked cars and that he would take hers there and leave it, to which statements plaintiff interposed no objection.

The collision occurred on a Saturday night and plaintiff was unable to make contact with defendant's agent, who had sold her the policy, until Wednesday of the following week, the agent being until that time unavailable. A report of the accident was then made, but no adjuster for defendant came to Seneca until October 13th, at which time defendant's adjuster contacted Hunnicutt, and presumably the agent who had written the policy, but did not contact the plaintiff. Hunnicutt gave the adjuster a repair estimate in the amount of $1,104.80, and the agent of defendant authorized Hunnicutt to proceed with the repairs. No repairs were ever authorized or agreed to by plaintiff. The adjuster left with Hunnicutt a draft for the amount of the repair bill, less the deductible portion, payable to both Hunnicutt and plaintiff, which had on the back thereof an endorsement constituting a full release by the plaintiff, and a separate full release to be signed by the plaintiff, with instructions to Hunnicutt that he was not to deliver the car to the plaintiff in the absence of her executing these documents.

It is clear that even though repaired by Hunnicutt, the plaintiff's car was substantially depreciated in value as a result of the collision, and there was uncontradicted evidence that its market value after being repaired was only the sum of $1,300. While under the terms of defendant's policy its liability was limited to "what it would

then cost to repair or replace the automobile or part with other of like kind or quality;" under the facts presented by this record and the principles enunciated in *Campbell v. Calvert Fire Ins. Co.,* 234 S. C. 583, 109 S. E. (2d) 572, defendant's liability under the policy was not limited to the amount of the repair bill, less the deductible amount. Plaintiff paid to Hunnicutt the one hundred dollars in compliance with the deductible provision of the policy, but still could not obtain possession of her automobile except by signing a full release, waiving her contractual right to collect from the defendant for the diminution in value of her automobile. The defendant, of course, had no right to impose this condition as a prerequisite to her obtaining possession of her automobile. Plaintiff refused to execute a full release and at the time of the trial Hunnicutt still had physical possession of the automobile.

Defendant argues that possession of the automobile is retained by Hunnicutt rather than by it; and that Hunnicutt is the bailee of the plaintiff, rather than the bailee of defendant, as the car was initially taken to him at least with plaintiff's implied approval. Even if it be assumed that Hunnicutt was initially plaintiff's bailee, when defendant took charge of plaintiff's automobile and authorized its repair without even consulting plaintiff, it at least took, we think, constructive possession thereof, and from that point on Hunnicutt, who was clearly acting under the directions of defendant with respect to the retention of the car, was at least defendant's agent if not its bailee.

Defendant contends that it cannot be held liable for conversion in that no demand for the possession of the car was made to it by the plaintiff. From the time of the collision until plaintiff sought the advice of counsel, about February 1966, defendant's adjuster elected to deal with plaintiff through Hunnicutt rather than dealing directly with her. It is unnecessary to review the evidence as to the unsuccessful efforts of the plaintiff to obtain possession of her car, without signing a full release, prior to the time

she obtained counsel. Suffice it to say, that the testimony of defendant's adjuster shows, that even after plaintiff had retained counsel, he persisted in making the execution of a full release a prerequisite to plaintiff obtaining possession of her automobile.

Under the principles, and the authorities cited, in *Powell v. A. K. Brown Motor Co.*, 200 S. C. 75, 20 S. E. (2d) 636, the evidence in this case is abundant to prove that the defendant unlawfully exercised dominion over plaintiff's property, to the extent that its acts clearly constituted an unlawful conversion of the same.

The exceptions of the appellant are all without merit and the judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., and Lewis and Brailsford, JJ., concur.

Littlejohn, J., disqualified.