579 S.E.2d 132

Albert SCHULMEYER, on behalf of himself and all others similarly situated, Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant.

No. 25612.

Supreme Court of South Carolina.

Heard Feb. 19, 2003.
Decided March 24, 2003.

Joseph Preston Strom, Jr., L. Henry McKellar, and Mario A. Pacella, all of the Strom Law Firm, L.L.C., of Columbia, for plaintiffs.

C. Mitchell Brown, of Nelson, Mullins, Riley & Scarborough, L.L.P., of Columbia; Michael T. Cole and John S. Slosson, both of Nelson, Mullins, Riley & Scarborough, L.L.P., of Charleston, for defendant.

Darra W. Cothran and Edward M. Woodward, Jr., both of Woodward, Cothran & Herndon, of Columbia, for Amicus Curiae National Association of Independent Insurers.

Fred Thompson, III, of Ness, Motley, of Mt. Pleasant, for Amicus Curiae Donna Norrie, Heather Plunkett and Sandra Orvig.

Justice, BURNETT.

We agreed to answer the following questions certified by the United States District Court for the District of South Carolina:

I.   Does State Farm's South Carolina automobile policy obligate it to compensate an insured making a comprehensive or collision claim for any diminution in market value where there is no dispute that the vehicle was adequately restored to its pre-accident level of performance, appearance, and function?

II.  If the answer to the previous question is yes, is Plaintiff bound by the appraisal provision within the insurance policy?

## FACTS

The facts are not disputed.  Albert Schulmeyer ("Schulmeyer") sustained damages to his automobile as the result of an accident.  A State Farm Fire and Casualty Company ("State Farm") adjustor estimated the loss at $3,268.02.  State Farm paid the amount of the loss minus the deductible.

Schulmeyer admits his vehicle was fully and properly repaired.  However, Schulmeyer asserts State Farm failed to compensate him for an additional $1,000 in "diminished value" to the vehicle, which occurred as a result of the accident.

## I

### Diminished Value

Schulmeyer asserts State Farm is obligated to pay for any diminishment in value of his vehicle beyond the cost of repairs.  Schulmeyer relies on *Campbell v. Calvert Fire Ins. Co.*, 234 S.C. 583, 109 S.E.2d 572 (1959), and *Lumpkin v. Allstate Ins. Co.*, 251 S.C. 19, 159 S.E.2d 852 (1968).

In *Campbell*, plaintiff claimed and judgment was entered for the total loss of his vehicle.  As there was no evidence to support the award, this court reversed the trial court and remanded the matter for further action.  In the opinion this Court wrote:

It follows from the foregoing that where there is a partial loss and the automobile can be repaired and restored to its former condition and value, the cost of repairs is the measure of liability, less any deductible sum specified in the policy. But if, despite such repairs, there yet remains a loss in actual value, estimated as of the collision date, the insured is entitled to compensation for such deficiency.

*Id.* at 591, 109 S.E.2d at 576–77.

*Campbell* is distinguishable from the present case. The State Farm insurance contract is more specific in its obligations than is the *Campbell* contract. The *Campbell* contract provided:

The limit of the company's liability for loss shall not exceed either

(1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss or

(2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, or

(3) the applicable limit of liability stated in the declarations.

*Campbell* 234 S.C. at 589, 109 S.E.2d at 576.

The State Farm contract at issue provides:

The limit of our liability for loss to property or any part of it is the lower of:

1.   the actual cash value; or

2.   the cost of repair or replacement

Actual cash value is determined by the market value, age and condition at the time the loss occurred. Any deductible amount that applies is then subtracted.

The State Farm policy defines the term "cost of repair or replacement" as:

1.   the cost of repair or replacement agreed upon by you and us;

2.   a competitive bid approved by us; or

3.   an estimate written based upon the prevailing competitive price ... [which] means prices charged by a

majority of the repair market in the area where the car is to be repaired . . .

Additionally, the State Farm policy explicitly reserves the insurer's right to indemnify the insured "for the loss in money or may repair or replace the automobile or such part thereof, as aforesaid."

Beyond the difference in the degree of specificity, we note the *Campbell* court failed to apply traditional principles of contract interpretation in construing the insurance contract.

The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language. *United Dominion Realty Trust, Inc. v. Wal–Mart Stores, Inc.*, 307 S.C. 102, 413 S.E.2d 866 (Ct.App.1992). Parties to a contract have the right to construct their own contract without interference from courts to rewrite or torture the meaning of the policy to extend coverage. *Gambrell v. Travelers Ins. Cos.*, 280 S.C. 69, 310 S.E.2d 814 (1983).

If the contract's language is clear and unambiguous, the language alone determines the contract's force and effect. *See United Dominion, supra.* When a contract is unambiguous a court must construe its provisions according to the terms the parties used; understood in their plain, ordinary, and popular sense. *C.A.N. Enter., Inc. v. South Carolina Health and Human Servs. Fin. Comm'n*, 296 S.C. 373, 373 S.E.2d 584 (1988).

An insurance contract is read as a whole document so that "one may not, by pointing out a single sentence or clause, create an ambiguity." *Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976). The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract. *Id.*

Rather than applying these principles, *Campbell* quoted a Texas case [1] to define "repair" and "replace" to mean "the

---

1. *American Stand. Cnty. Mut. Ins. Co. v. Barbee,* 262 S.W.2d 122, 123 (Tex.Civ.App.1953), *disapproved of on other grounds by Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115 (Tex.1984).

restoration of the automobile to substantially the same condition in which it was immediately prior to the collision", while noting "it would not be restored to the condition if the repair left the market value of the automobile substantially less than the value immediately before the collision." *Campbell,* 234 S.C. at 592, 109 S.E.2d at 576. The differing policy languages between the *Campbell* contract and the more specific language in the State Farm Contract combined with the requirement we apply traditional principles of contract interpretation render a contrary result from *Campbell.*[2]

Schulmeyer seeks to recover for diminution of his vehicle's value. The question is: under the insurance contract "must the insurer pay for damage which is not repairable but which nonetheless results in a diminution in value of the insured automobile?" *See Carlton,* 32 S.W.3d at 462. Because *Campbell* does not control our decision, we have reviewed authorities of other jurisdictions.

There is split authority over whether a plaintiff should be allowed to recover diminished value beyond the cost of repairs, with the recent trend disfavoring the claim.[3]

---

2. Likewise, *Lumpkin* is not binding as precedent. In *Lumpkin,* this Court applied the *Campbell* rule in dicta within a case concerning the tort of conversion. The *Lumpkin* Court decision did not involve the interpretation of the language of an insurance contract.

3. *See, e.g., Driscoll v. State Farm Mut. Auto. Ins. Co.,* 227 F.Supp.2d 696 (E.D.Mich.2002); *Pritchett v. State Farm,* 834 So.2d 785 (Ala.Civ.App. 2002); *Johnson v. State Farm Mut. Auto. Ins. Co.,* 157 Ariz. 1, 754 P.2d 330 (1988); *Ray v. Farmers Ins. Exch.,* 200 Cal.App.3d 1411, 246 Cal.Rptr. 593 (1988); *Siegle v. Progressive Consumers Ins. Co.,* 788 So.2d 355 (Fla.Ct.App.2001); *General Accident Fire & Life Assur. Corp. v. Judd,* 400 S.W.2d 685 (Ky.1966); *Campbell v. Markel Am. Ins. Co.,* 822 So.2d 617 (La.Ct.App.2001); *Townsend v. State Farm Mut. Auto. Ins. Co.,* 793 So.2d 473 (La.Ct.App.2001); *Carlton v. Trinity Universal Ins. Co.,* 32 S.W.3d 454 (Tex.App.2000); *Bickel v. Nationwide Mut. Ins. Co.,* 206 Va. 419, 143 S.E.2d 903 (1965). For cases supporting the right to recover for diminution in value see *MFA Ins. Co. v. Citizens Nat'l Bank of Hope,* 260 Ark. 849, 545 S.W.2d 70 (1977); *State Farm Mut. Auto. Ins. Co. v. Mabry,* 274 Ga. 498, 556 S.E.2d 114 (2001); *Venable v. Import Volkswagen, Inc.,* 214 Kan. 43, 519 P.2d 667 (1974); *Potomac Ins. Co. v. Wilkinson,* 213 Miss. 520, 57 So.2d 158 (1952); *Barton v. Farmers Ins. Exch.,* 255 S.W.2d 451 (Mo.Ct.App.1953); *Eby v. Foremost Ins. Co.,* 141 Mont. 62, 374 P.2d 857 (1962); *National Farmers Union Prop. & Cas. Co. v. Watson,* 298 P.2d 762 (Okla.1956); *Dunmire Motor Co. v. Oregon Mut. Fire Ins. Co.,* 166 Or. 690, 114 P.2d

The minority view espoused most recently by the Georgia Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001), allows recovery for diminution in value. The Georgia court relied on public policy exceptions inherent in Georgia insurance contracts which are not applicable under South Carolina law. Specifically, the Georgia court based its decision on the understanding implicitly imported into each Georgia insurance contract that loss due to physical damages encompasses both utility and value. As such, an insurer is obligated under Georgia law to pay the cost of repairs and diminution in value.

No similar public policy applies to insurance contracts in this state. Rather this Court is required to give effect to the plain meaning of the words in an unambiguous contract. *See United Dominion, supra.*

The majority of states to recently address the issue deny recovery for diminution in value. These courts rest their decisions on the rationale the terms "repair" and "replace" are not ambiguous when viewed in light of the entire contract. *See, e.g., Siegle, supra.* As such they apply, as we must, the commonly used definition of those words to limit any such recovery.

Generally, "repair" means "[t]o mend, remedy, restore, renovate ... [t]o restore to a sound or good state after decay, injury, dilapidation, or partial destruction." *Black's Law Dictionary* 1298 (6th ed.1990); *see also Webster's II New College Dictionary* 939 (1995) ("repair" means "[t]o restore to sound condition after damage or injury ..."); *Merriam–Webster's Collegiate Dictionary* 991 (10th ed.1999) ("repair" means "to restore by replacing a part or putting together what is torn or broken").

---

1005 (1941); *Senter v. Tennessee Farmers Mut. Ins. Co.*, 702 S.W.2d 175 (Tenn.Ct.App.1985) overruled by *Black v. State Farm Mut. Auto. Ins. Co.*, No. E2002-00206-COA-R3-CV, 2002 WL 31476900 (Tenn.Ct.App. filed Nov. 6, 2002), cert. denied No. E2002-00206-SC-R11-CV (Tenn. March 17, 2003). *See also* L.S. Tellier, Annotation, "Measure of Recovery By Insured Under Automobile Collision Insurance Policy," 43 A.L.R.2d 327 (1955)—(Supp.2001) (providing an overview of state law in such cases).

■ In the context of an insurance contract the word "replace" means the insurer will "restore [the insured's vehicle] to a former place or position," or "take the place of . . . as a substitute or successor." *See Siegle v. Progressive Consumers Insurance Co.*, 819 So.2d 732, 736 (Fla.2002); see also *Merriam–Webster's Collegiate Dictionary* 992 (10th ed.1999).

There is no concept of value in the ordinary meaning of these words. *See Carlton, supra; Markel,* 822 So.2d at 627 ("To interpret the word 'repair' as encompassing the diminished value of an automobile would go beyond the word's plain meaning."). As such the majority view disfavors imparting the concept of value into "repair or replace" provisions to require an insurer pay for the loss of value as a result of an accident. *Carlton,* 32 S.W.3d at 464 ("Ascribing to the words 'repair or replace' an obligation to compensate the insured for things [i.e., diminished market value] which, by their very nature, cannot be 'repaired' or 'replaced' would violate the most fundamental rules of contract construction.").

The State Farm policy *sub judice* does not recognize value as inherent in the concept "repair or replacement." The policy recognizes the cost of repair or replacement may be determined by a rate agreed between insurer and insured; a competitive bid approved by the insurer; or an estimate based upon the prevailing competitive market price. The policy, read as a whole, defines repair or replacement as restoring the vehicle to pre-accident mechanical function and condition and not as restoring value.

To read value into the repair clause would arbitrarily read out of the policy the insurer's right to determine whether to repair the vehicle or to pay for its loss. *Bickel,* 143 S.E.2d at 906. The language provision in the present case expressly limits coverage to the lesser of the actual value or the cost of repair. These are alternatives, which do not include an additional obligation to pay for diminished value when the cost of repair is chosen. "Reading into the cost of repair a requirement to also pay for diminished value would render the limitation provision meaningless, as the insurer would essentially always pay for the value of the car." *Driscoll,* 227

F.Supp.2d at 707; *see also Ray,* 246 Cal.Rptr. at 596.[4]

**Certified Question Answered.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.

---

4. Because of our answer to the first certified question, we do not address the second question.