THE STATE OF SOUTH CAROLINA

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
James Southard, Jr., and Developments Unlimited, LLC,
Respondents,
v.
Lee Pye, Russ Pye and Justin Enterprises, a South Carolina General Partnership,
Appellants.
 
 
 

Appeal From Charleston County
 Roger M. Young, Circuit Court Judge

Unpublished Opinion No. 2006-UP-309
Heard February 7, 2006  Filed July 7, 2006

AFFIRMED

 
 
 
Bonnie Travaglio Hunt, of Charleston, John S. Nichols, of Columbia, and Linda Weeks Gangi, of Conway, for Appellants.
G. Thomas Hill, of Ravenel, for Respondents.
Timothy Alan Domin, of Charleston, for Amicus Curiae. 
 
 
 

 PER CURIAM:  Lee Pye, Russ Pye, and Justin Enterprises (Appellants or Pyes) appeal a circuit court order granting James Southard and Development Unlimiteds (Respondents or Southard) motion to compel settlement.  We affirm. 
This appeal arises from a series of lawsuits between Justin Enterprises, a partnership owned and operated by Russ and Lee Pye, and adjoining landowners in Charleston County, South Carolina.  Although the facts of the previous litigation are, for the most part, irrelevant to the issues on appeal, a brief review will provide insight into the parties positions.
The Pyes own tracts of land in Charleston County.  The County of Charleston owned land adjacent to the Pyes on which it planned to develop an ash landfill to dispose of trash from a waste incinerator.  The County petitioned the Army Corps of Engineers for, and received, a permit for filling a portion of wetlands on their property to construct a road.  The Pyes successfully challenged the Corps issuance of the permit, alleging it violated several federal laws related to the historical significance of the property and the effect such a road may have on endangered species in the area.
Respondents own another tract of land adjacent to both the Appellants and the Countys property.  Respondents also hold an easement over the Appellants property, which provides access to a public road.  Respondents sought to increase this easement to facilitate development or the harvesting of timber from the property.  The Pyes refused to so expand the easement.
Seeking another way to access the property, Respondents sought and obtained an easement from the County to construct a road across the Countys property to facilitate access to their property.  The Pyes then brought another action against the County arguing they were merely letting Respondents do indirectly that which they were prevented from doing directly by the previous litigation.  Respondents intervened in this action as third-party defendants.  The Pyes obtained a temporary injunction preventing Respondents from constructing the road after which Respondents agreed to terminate their easement with the County.  Thereafter, the case was rendered moot.
On February 26, 2002, Respondents brought the current suit against the Pyes alleging nine causes of action, including, inter alia, libel, slander, malicious prosecution, slander of title, and intentional infliction of emotional distress.  These accusations were based on the Pyes alleged conduct as it related to preventing Respondents from enjoying their property.
The Pyes informed their liability carrier, State Farm, of the impending lawsuit and State Farm undertook representation by hiring an attorney to defend the Pyes.  The Appellants policies with State Farma commercial liability policy, a business policy, and a homeowners policyprovide, in pertinent part, the following respectively: We may investigate and settle any claim or suit at our discretion; and [w]e may investigate, negotiate and settle a claim or suit covered by this policy.[1] 
A jury trial was set to begin on June 7, 2004.  Before trial began, the Pyes attorney informed them that after consulting with Respondents, State Farm was willing to settle the litigation for $120,000 provided the parties both signed a mutual release.  The Pyes informed their attorney they would not be willing to sign a mutual release if the Respondents received any money from State Farm.  In particular, it appears the Pyes were concerned with what effect the proposed settlement would have on their ability to obtain insurance in the future.  The Pyes were also concerned with what would happen to their coverage following their refusal to sign the release suggested in the proposed settlement.  
The Pyes and their attorney shared these concerns with the circuit court judge in a chambers conference.  The judge continued the action for 30 days so the Pyes could consult with another attorney who possessed a more thorough understanding of their rights under their State Farm policies.  On June 10, Respondents contacted the Pyes attorney and withdrew their demand for a mutual release.[2]  
In the meantime, the Pyes original attorney sent a draft general release to Respondents for their consideration.  On June 17 and 18 the Pyes consulted with coverage counsel for State Farm who informed them he believed the case was settled and it was his understanding State Farm had the exclusive right to settle the case without their knowledge.  
On June 22, the Pyes obtained independent counsel who filed a notice of appearance and a motion for injunctive relief to prevent consummation of the proposed settlement.  Also on June 22, Respondents signed and returned the proposed settlement to the Pyes original counsel.  
On August 9, 2004, Respondents filed a motion with the circuit court seeking to enforce the settlement agreement.  The Pyes submitted a motion in opposition asserting, inter alia, that the settlement was unenforceable because there was no meeting of the minds between the real parties in interest and that their former attorney lacked any authority, apparent or actual, to settle the case.  The motion was supported by an affidavit from the Pyes, which among other things, stated their belief that the State Farm appointed attorney ceased representing them following the chambers conference with the circuit court judge.    
On August 25, a hearing was held before the circuit court on the motion to compel settlement.  After considering the arguments, the court stated that it believed State Farm had a right to settle the case over the Pyes objections.  The circuit court issued an order on August 26 officially granting the motion based on its belief that the language in the Pyes policies allowed the insurance company to settle the covered claims at issue in this case without [the Pyes] consent and over their objection.  The Pyes filed a Rule 59(e), SCRCP, motion to alter or amend the courts ruling.  The circuit court summarily denied this motion on September 21, 2004.  
LAW/ANALYSIS
Appellants first argue the trial court erred in compelling the settlement over their objection considering that it recognized a conflict of interest between them and their State Farm appointed counsel.
Appellants argument on this issue is based primarily on the purported conflict recognized by the circuit court and their assertion that they fired their attorney before the settlement was entered into.  They support this position with Rules 1.2 and 1.16, SCACR.  Rule 1.2 states in pertinent part that a lawyer shall abide by a clients decisions concerning . . . whether to accept an offer of settlement of a matter.  Similarly, Rule 1.16 states that a lawyer . . . shall withdraw from the representation of a client if . . . the lawyer is discharged.
Accordingly, Appellants argue that because their attorney was discharged prior to the settlement being entered into, she was not in a position to negotiate on their behalf and, thus, the settlement should not be upheld.
In response to Appellants position, Respondents simply assert that neither they nor the court were aware that Appellants discharged their attorney.  They note that the transcript from Appellants chambers conference with the judge simply shows the court provided the Appellants time to seek legal counsel regarding their insurance coverage.  Because the settlement was entered into in the normal course of business, Respondents aver it was properly enforced by the circuit court.    
After review, we agree with the circuit court and Respondents that the record does not support Appellants position that their attorney was discharged prior to the settlements consummation.  A review of the transcript from Appellants chambers conference shows the judge was merely giving Appellants an opportunity to consult with coverage counsel concerning their rights under the various insurance policies.  Nowhere is there mention of any purported conflict of interest between the Pyes and their State Farm appointed attorney.  
Having correctly determined their attorney was still representing them at the time the settlement was entered into, the circuit court held the language of the various insurance policies at issue gave State Farm the right to settle the case unilaterally without the Pyes consent.  We agree with this ruling.
Insurance contracts are subject to the general rules of contract construction.  Hansen ex rel. Hansen v. United Servs. Auto. Assn, 350 S.C. 62, 68, 565 S.E.2d 114, 116 (Ct. App. 2002) (citing Standard Fire Ins. Co. v. Marine Contracting & Towing Co., 301 S.C. 418, 421, 392 S.E.2d 460, 461 (1990)).  The primary purpose of all rules of contract construction is to determine the intent of the parties.  Id.  If the contracts language is clear and unambiguous, the language alone determines the contracts force and effect.  Schulmeyer v. State Farm Fire & Cas. Co., 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003) (citation omitted).
As noted earlier, the insurance policies at issue all included clauses which unambiguously gave State Farm the right to investigate, negotiate, and settle any claim covered by the policy.  Because we find the Pyes attorney was not discharged and that the various policies gave State Farm the right to settle the case unilaterally, we find the trial court did not err in granting Respondents motion to compel the settlement.  
Appellants next argue, based on their assertion that the trial court recognized a conflict of interest between them and their attorney, that counsel was without any actual or implied authority to settle the case over their objections.  However, because our previous ruling disposes of this issue, we need not address it.  See Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling appellate court need not review remaining issues when disposition of prior issues are dispositive); Rule 220(c), SCACR ([t]he appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in Record on Appeal).
Appellants also assert the settlement does not comply with the requirements of Rule 43(k), SCRCP and, because of this, the settlement should not be enforced.
Rule 43(k) states [n]o agreement between counsel affecting the proceedings in an action shall be binding unless reduced to the form of a consent order or written stipulation signed by counsel and entered in the record, or unless made in open court and noted upon the record.  See also Ashfort Corp. v. Palmetto Construction Group, Inc., 318 S.C. 492, 458 S.E.2d 533 (1995) (stating that rule is applicable to settlement agreements).
Appellants aver that because they, nor anyone on their behalf, ever signed the general release and there was no other writing purporting to settle the case, the settlement is unenforceable.  They maintain this is true because at the time Respondents signed the general release, Appellants had relieved their State Farm appointed attorney and obtained independent counsel to prevent consummation of the settlement.
Although Appellants admit Rule 43(k) does not apply when the settlement has been admitted or carried into effect, they assert they never agreed to the settlement.  In addition, Appellants maintain that Respondents counsel was aware of their disagreement with their prior attorney, including the fact that she no longer represented them in this action.  
As noted previously, we find Appellants contention that their attorney no longer represented them to be without merit.  At least, it is clear she was not discharged before State Farm and Respondents agreed on the terms of the settlement.  Accordingly, as we have concluded that State Farm, under the language of the pertinent policies, was entitled to settle the case unilaterally, whether the Pyes signed the settlement is irrelevant.  As the trial court noted, there was an enforceable settlement at the moment the [Respondents] dropped their request for a mutual release and State Farm said we will pay you if you sign a general release.  
Appellants final argument is that an insureds duty to cooperate with the insurer under a liability insurance policy does not allow an insurer to settle a case against an insureds interests and over the insureds objections.  Specifically, they assert that an insurance company, at least under the facts of this case, should not be allowed to settle against the wishes of the insured when the insureds have a meritorious defense to the claims against them.
Again, because we find the trial court was correct in concluding the underlying policies at issue gave State Farm the right to settle the case unilaterally, we need not address the merits of Appellants policy argument.  Futch, 335 S.C. at 613, 518 S.E.2d at 598.
 AFFIRMED.
BEATTY, SHORT, and WILLIAMS, JJ., concur.

[1] Provisions of this type are often referred to as deems expedient clauses.  In support of Respondents position, State Farm submitted an Amicus Curiae brief which essentially argues South Carolina, although not officially, seems to follow the majority of jurisdictions which hold the presence of a deems expedient clause in an insurance contract gives the insurer permission to settle a claim without the consent of the insured.  
[2] On June 15, State Farm wrote to the Pyes and informed them State Farm was denying the Pyes a defense under their liability policies in a separate legal action.  On June 21 the Pyes original attorney sent them a letter stating she received State Farms notice denying the Pyes a defense in the separate action.  This letter was somewhat confusing in that it referenced the current lawsuit as well as the separate lawsuit.  Included with the letter were a Motion to be Relieved as Counsel and a Consent Order relieving her as counsel in the matter.