781 S.E.2d 737

Robert S. JONES, Appellant,

v.

BUILDERS INVESTMENT GROUP, LLC, Brian D. Boone, and Arden Homebuilders, LLC, Defendants,

Of whom Builders Investment Group, LLC and Brian D. Boone are Respondents.

Appellate Case No. 2013–002673.
No. 5373.

Court of Appeals of South Carolina.

Heard Sept. 10, 2015.
Decided Dec. 30, 2015.
Rehearing Denied Feb. 19, 2016.

D. Reece Williams, III and Kathleen McColl McDaniel, both of Callison Tighe & Robinson, LLC, of Columbia, for appellant.

Thornwell F. Sowell, III, of Sowell Gray Stepp & Laffitte, LLC, of Columbia, and David Cochran Dick, Jr., of the Law Office of David C. Dick, of Charleston, for respondents.

WILLIAMS, J.

In this civil appeal, Robert Jones contends the circuit court erred in granting Builders Investment Group, LLC (BIG) and Brian D. Boone's (collectively "Respondents") motion for judgment notwithstanding the verdict (JNOV). Jones claims the circuit court (1) erroneously held his personal payment of the parties' business loan discharged Respondents from their legal responsibility to contribute toward the payoff of the business loan and (2) misconstrued the terms of the parties' operating agreement regarding personal guaranties. We affirm.

**FACTS/PROCEDURAL HISTORY**

This appeal stems from a dispute between Jones and Respondents over whether Jones is entitled to contribution from Respondents for debts arising out of a joint business venture. In 2005, Holt Family Homes, LLC was formed to develop, build, and sell residential homes. At its inception, the company had four Class A members, one of whom was Jones.[1] BIG was a Class B member, and Boone had no ownership interest in Holt Family Homes.

In January 2007, Holt Family Homes obtained a loan from Southern First Bank [2] (SFB) for $300,500. Three of the Class A members—Jones, Keisler, and Buck—signed and personally guaranteed the loan. In April 2007, Holt Family Homes obtained a second loan from SFB for $199,250. The same Class A members signed and guaranteed this second loan.

---

1. The remaining Holt Family Homes Class A members were Robert Keisler, Carl Buck, and Wetzel Holt.

2. SFB was operating as Greenville First Bank, N.A. at the time of the September and April 2007 loans to Holt Family Homes.

In the summer of 2007, Boone and BIG agreed to make capital contributions and investments in Holt Family Homes.[3] BIG contributed additional capital of $625,000,[4] and Boone contributed capital of $125,000. In exchange for these investments, Boone and BIG became Class A members. To reflect these investments and changes in membership status, the company amended its operating agreement (Arden Operating Agreement) on July 31, 2007. As part of these amendments, the company's name was also changed from Holt Family Homes to Arden Homebuilders, LLC (Arden).

On September 25, 2007, Jones, Keisler, and Buck—the guarantors on the initial two loans with SFB—consolidated these two loans into one new loan for $498,000 in Arden's name (Arden Loan). Similar to the initial two loans, only these three individuals signed and personally guaranteed the newly consolidated Arden Loan.

Almost one year later, on September 24, 2008, Buck was removed as a personal guarantor on the Arden loan. Only Jones and Keisler signed the renewed note. Jones confirmed that neither Boone nor BIG was asked about removing Buck as a personal guarantor, and neither Boone nor BIG personally guaranteed the amended Arden loan. On December 8, 2009, Jones obtained a personal loan with SFB in the amount of $449,326.33 to satisfy the Arden loan.[5] SFB marked the Arden loan as satisfied and transferred the balance to Jones's personal loan.

---

3. Boone's eventual involvement in Holt Family Homes—and subsequently in Arden Homebuilders, LLC—stemmed from Boone's spousal relationship with the managing member of BIG, Kathy Boozer Boone. Prior to BIG and Boone's involvement, Jones and Keisler worked for Boozer Lumber Company. Jones and Keisler discussed the idea of creating Holt Family Homes with Kathy Boone's father, Dale Boozer, who was the president and CEO of Boozer Lumber Company. Jones suggested at trial that Dale Boozer came up with the idea of creating this business venture in an effort to vertically integrate into the Charlotte housing market and expand their market share.

4. BIG had already contributed $300,000 in capital as a Class B member.

5. At trial, Jones testified he liquidated certain assets he had placed in SFB's security vault in an effort to decrease the $498,000 loan prior to executing the personal loan with SFB.

Jones was unable to repay the personal loan and subsequently executed a confession of judgment to SFB regarding his personal loan on November 8, 2012. Jones testified at trial that he had not made any payments on his personal loan or on the confession of judgment. The president of SFB, Justin Strickland, also affirmed Jones's testimony. Strickland acknowledged that Jones's personal loan was charged off in varying increments between December 29, 2009, and December 20, 2010. Despite writing off Jones's personal loan, Strickland testified SFB eventually sued Jones on the promissory note, which resulted in the confession of judgment against him.

On March 23, 2011, Jones filed suit against Respondents for breach of contract and breach of fiduciary duty. Jones alleged in his complaint that Respondents were required to personally guarantee the Arden loan based on their status as Class A members under the Arden Operating Agreement. In support of his position, Jones cited to section 2.3 of the Arden Operating Agreement, which states as follows:

**2.3 Guaranty of Loans to Company.** Each of the Class A Members (but none of the Class B Members) shall, in its individual capacity, jointly and severally guaranty any loan to the Company ("Guaranteed Loan") for so long as any guaranty of such loan is required by the lender. Notwithstanding any other provision of this Agreement or any provision of the Guaranteed Loan documents, as between the Members, each Class A Member shall be responsible for paying such Class A Member's proportionate share of any Guaranteed Loan ("Guaranty Percentage").... Any Class A Member who pays more than such Class A Member's Guaranty Percentage of the Guaranteed Loan to the Lender shall be entitled to contribution from the other Class A Members.

Jones contended the Arden Operating Agreement—by the plain terms of section 2.3—required Respondents to pay their proportionate share of the loan, and Respondents' failure to do so entitled Jones to contribution for the full amount of the loan, plus interest, costs, and reasonable attorney's fees.

Prior to trial, Respondents moved for summary judgment on both causes of action. As to the breach of contract cause of

action, Respondents acknowledged section 2.3 and its require-
ment for all Class A Members to pay their proportionate
share of any guaranteed loans. However, Respondents
claimed Jones had never paid his proportionate share of the
loan and, thus, could not seek contribution pursuant to the
Arden Operating Agreement until he had done so. In addi-
tion, Respondents claimed the plain language of section 6.6(a)[6]
of the Arden Operating Agreement requires a Class A mem-
ber to personally guarantee a loan before liability can attach,
noting the Arden loan was entered into before BIG and Boone
became Class A members. Because SFB never required
Respondents to guarantee the Arden loan, Respondents con-
tended they could not be liable for any portion of the loan as a
matter of law.

Prior to trial, the circuit court granted Respondents' sum-
mary judgment motion on Jones's breach of fiduciary duty
claim. On December 10–11, 2012, the case proceeded to trial
on Jones's breach of contract claim against Respondents.
Respondents moved for a directed verdict at the close of
evidence, which the circuit court denied. The jury returned a
verdict in Jones's favor. Respondents then filed a motion for
JNOV or, in the alternative, a new trial, reiterating the
grounds they raised in support of their directed verdict motion
at trial. After hearing arguments from counsel, the circuit
court granted Respondents' motion for JNOV on May 15,
2013. Thereafter, Jones timely filed a Rule 59(e), SCRCP,
motion. On November 18, 2013, the circuit court denied
Jones's Rule 59(e) motion in an eight-page order. This appeal
followed.

## ISSUES ON APPEAL

I. Did the circuit court err in holding Jones's personal
 payment of the Arden loan discharged Respondents
 from their legal responsibility to contribute toward the
 payoff of the Arden loan?

---

**6.** Section 6.6(a) of the Arden Operating Agreement states, "No member
shall be liable for the debts or any other obligations or liabilities of the
Company, whether arising in contract, tort or otherwise unless a
Member guarantees any debt or obligation as required under Article
2.3."

II. Did the circuit court misconstrue the terms of the Arden Operating Agreement regarding personal guaranties?

**STANDARD OF REVIEW**

When reviewing the circuit court's ruling on a directed verdict or JNOV motion, this court must apply the same standard as the circuit court "by viewing the evidence and all reasonable inferences in the light most favorable to the non-moving party." *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 27–28, 602 S.E.2d 772, 782 (2004). The circuit court must deny a motion for a directed verdict or JNOV if the evidence yields more than one reasonable inference or its inference is in doubt. *Strange v. S.C. Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994). Moreover, "[a] motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict." *Gastineau v. Murphy*, 331 S.C. 565, 568, 503 S.E.2d 712, 713 (1998). In deciding such motions, "neither the [circuit] court nor the appellate court has the authority to decide credibility issues or to resolve conflicts in the testimony or the evidence." *Welch v. Epstein*, 342 S.C. 279, 300, 536 S.E.2d 408, 419 (Ct.App. 2000). This court will reverse the circuit court's ruling only if no evidence supports the ruling below. *RFT Mgmt. Co., LLC v. Tinsley & Adams LLP*, 399 S.C. 322, 332, 732 S.E.2d 166, 171 (2012).

**LAW/ANALYSIS**

**I. Jones's Entitlement to Contribution**

Jones first claims that because he paid more than his proportionate share of the Arden Loan, he is entitled to contribution from Respondents pursuant to section 2.3 of the Arden Operating Agreement. We disagree.

"The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003). When the contract's language is clear and unambiguous, the language alone determines the contract's force and effect. *Id.* A contract is read as a whole document so that one

may not create an ambiguity by pointing out a single sentence or clause. *Id.* (quoting *Yarborough v. Phoenix Mut. Life Ins. Co.,* 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976)). "It is a question of law for the court whether the language of a contract is ambiguous." *S.C. Dep't of Nat. Res. v. Town of McClellanville,* 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001).

In support of his position, Jones cites to section 2.3 of the Arden Operating Agreement, which states as follows:

**2.3 Guaranty of Loans to Company.** Each of the Class A Members (but none of the Class B Members) shall, in its individual capacity, jointly and severally guaranty any loan to the Company ("Guaranteed Loan") for so long as any guaranty of such loan is required by the lender. Notwithstanding any other provision of this Agreement or any provision of the Guaranteed Loan documents, as between the Members, each Class A Member shall be responsible for paying such Class A Member's proportionate share of any Guaranteed Loan ("Guaranty Percentage").... *Any Class A Member who pays more than such Class A Member's Guaranty Percentage of the Guaranteed Loan to the Lender shall be entitled to contribution from the other Class A Members.*

(emphasis added).

■■■■ The dispositive question in this case is whether Jones "paid" the Arden Loan such that he is entitled to contribution from Respondents pursuant to section 2.3. We agree with the circuit court and find Jones's signing of a personal promissory note with SFB in satisfaction of the Arden Loan was insufficient, as a matter of law, to fulfill the plain requirements of section 2.3. Our law is clear that a promissory note is only a promise to pay, not actual payment of a debt. *See* S.C.Code Ann. § 36–9–102(65) (Supp.2014) (" 'Promissory note' means an instrument that evidences a *promise to pay* a monetary obligation, does not evidence an order to pay, and does not contain an acknowledgment by a bank that the bank has received for deposit a sum of money or funds." (emphasis added)). We also believe that neither SFB's decision to write off Jones's promissory note nor its execution of a confession of judgment against Jones satisfied

the requirement for payment under the Arden Operating Agreement. By signing the promissory note and satisfying Arden's obligation to SFB, Jones simply incurred a liability on Arden's behalf. Because Jones submitted no proof at trial[7] that he had paid more than his proportionate share of the Arden loan as required by the plain language of the Arden Operating Agreement, we conclude he has suffered no actual damages and is not entitled to contribution from Respondents pursuant to section 2.3 of the Arden Operating Agreement.[8] *See Schulmeyer*, 353 S.C. at 495, 579 S.E.2d at 134 (noting when the contract's language is clear and unambiguous, the language alone determines the contract's force and effect).

## II. Construction of the Arden Operating Agreement

 Next, Jones contends the circuit court misconstrued the terms of the Arden Operating Agreement regarding per-

---

7. The circuit court's Rule 59(e) order indicates Jones attempted to introduce evidence at the Rule 59(e) hearing to document that he had paid SFB some portion of either the Arden loan or his personal loan. Because Jones did not submit this evidence prior to the court's order granting JNOV, the court refused to consider it. On September 2, 2015, this court received a motion from Jones, requesting to supplement the record pursuant to Rule 212(a), SCACR, with a May 8, 2014 letter documenting payments he has made on the loan. This court denied Jones's motion.

8. We also concur with the circuit court's ruling that section 2.3 was a contract for indemnity against loss, thereby requiring proof of loss before Jones could assert a claim for breach of contract. Our courts have recognized two types of indemnity contracts: (1) a contract for indemnity against liability and (2) a contract for indemnity against loss. *See Piper v. Am. Fid. & Cas. Co.*, 157 S.C. 106, 112, 154 S.E. 106, 108 (1930). In a contract for indemnity against liability, the obligation to indemnify arises when the liability is incurred, whereas in a contract for indemnity against loss, the indemnitee must have made some form of payment before he can assert a breach of the contract. *Id.* (quoting 1 Joseph A. Joyce, Joyce on Insurance § 27b (2d ed.1917)). Because the Arden Operating Agreement specifically requires a member to "pay" more than this proportionate share before he is entitled to recover against other members, we believe this is a contract for indemnity against loss and, as such, "liability does not attach until loss has been suffered, that is when the [indemnitee] has *paid* the damages." *Id.* (emphasis added) (quoting 1 Joyce, *supra*); *see also Shealey v. Am. Health Ins. Corp.*, 220 S.C. 79, 83, 66 S.E.2d 461, 462 (1951) (noting that when a contract is for indemnity against loss, "no action will lie in favor of the [indemnitee] until some loss or damage has been sustained by him, either by payment of the whole or some part of the claim").

sonal guaranties. Specifically, Jones argues the court erred in finding section 2.3 unambiguously provided that a Class A member would not have to personally guarantee a loan if a lender did not specifically require that particular member to do so. We disagree.

■ We hold Jones abandoned this issue on appeal. "An issue is deemed abandoned if the argument in the brief is not supported by authority or is only conclusory." *Potter v. Spartanburg Sch. Dist. 7*, 395 S.C. 17, 24, 716 S.E.2d 123, 127 (Ct.App.2011). In his brief, Jones presented the following one-paragraph argument regarding the circuit court's construction of the Arden Operating Agreement:

> The express terms of the Operating Agreement state that, "[e]ach of the Class A Members (but none of the Class B Members) shall, in its individual capacity, jointly and severally guaranty any loan to the Company ("Guaranteed Loan") for so long as any guaranty of such loan is required by the lender." Respondents BIG and Boone were Class A Members of Arden, and Southern First Bank required the Renewed Loan to be personally guaranteed. Therefore, pursuant to the express terms of the Operating Agreement, Respondents BIG and Boone were required to personally guaranty the Renewed Loan. The fact that they did not want to guaranty the Renewed Loan and did not do so does not mean that they were not contractually required by the Operating Agreement to give the guaranty.

Because Jones cited no authority in this section and his argument was largely conclusory, we find this issue is abandoned on appeal. *See id.*

**CONCLUSION**

Based on the foregoing, the circuit court's decision is

**AFFIRMED.**

HUFF and THOMAS, JJ., concur.